As I indicated during the calling of the calendar earlier, we'll take Chance v. Barr, 72660 next. We'll hear from counsel. JOSEPH MORVEC, PETITIONER Good morning, Your Honor, and may it please the Court. My name is Joseph Morvec on behalf of the Petitioner, Corey Chance. Because of the limited time I have, Mr. Chance has raised issues with the way that his withholding claim was managed by the Immigration Agency. I will focus my attention on what I see as the most important issue and rest on the brief regarding the withholding issue. I think the most important issue here today is to satisfy due process how much time is necessary to give Mr. Chance once he's made a prima facie showing that his U visa is likely to be granted. Here the agency misapplied its own legal precedence in two key ways. First, under matter of Sanchez-Souza, the agency inappropriately placed the burden on him to show that U visa would be granted within a reasonable amount of time. That was backwards. Second, the agency ignored the merits of Mr. Chance. Alito That's because there was a presumption in his favor? JOSEPH MORVEC, PETITIONER Yes, Your Honor. Under Sanchez-Souza, he was entitled to a presumption that he warranted a favorable exercise of discretion when giving him that continuance. He — and so Sanchez-Souza actually says the continuance should be for a reasonable amount of time. In the Board of Immigration Appeals decision, they say that he did not make a showing that it would be granted within a reasonable amount of time. ALITO Well, is it — was it time-focused or was it merit-focused? In other words, Sanchez-Souza talks about courts considering — even once a U visa has been applied for, even at that point, the court can still inquire as to the likelihood of getting — getting the visa, right? JOSEPH MORVEC, PETITIONER That's correct. So there's two separate issues as to why the court really misapplied or — ALITO But the court did consider the likelihood of getting a visa, right? JOSEPH MORVEC, PETITIONER So the court really didn't. So the — the immigration judge doesn't actually make an analysis in his opinion about the likelihood of success. His only analysis of that issue is — is anecdotally, and this is at 178, the record. He says that the Respondent, who has only simple possession of controlled substances, cases like that that he's seen are both eligible for the waiver and have been granted in even worse cases. He doesn't make any further analysis of the merits. And the merits are really addressed in the filing of the U visa petition. It's over 100 pages of documents. It includes both the certification from the Brooklyn district attorney's office, his own statement, medical records, and statements of support from his family, friends, showing that he's likely to be granted the U visa. But the — ALITO Friends and family are relevant to the granting of the U visa? JOSEPH MORVEC, PETITIONER That's correct. So the U visa itself, there's two parts. The first is whether or not he's granted the U visa. And the second is the waiver of inadmissibility. So the U visa he's prima facie approvable for simply because the Brooklyn district attorney issues a certification, he files the appropriate paperwork. And that prima facie notice is given by USCIS. In the record, it's at 703. So they provide that on October 6, 2016, right before the immigration judge makes his decision. So he's already prima facie approval for the U visa. The question turns on whether or not he's eligible for the waiver of inadmissibility. Statutory, there's two reasons why he showed he was eligible and that the immigration judge and the BIA ignored. The first is that statutorily, under INA section 1182d14, there's only one exemption from being eligible for the waiver, and that's participation in genocide. So he didn't have it. The district court or the immigration judge opined that he had seen these granted in much worse cases and made no evidentiary analysis of his actual application for the U visa, which included those types of documents that USCIS would consider in whether or not to grant him that waiver. I take it the U visa application remains pending? It does. As of a couple of days ago, when I checked, Your Honor, it does remain pending. There is a backlog of U visas. That's due to a number of factors that are wholly outside Mr. Chance's control. There's statutory limitation on the number that can be granted. USCIS is understaffed. But that's the government's problem. This is a problem that they're making. Mr. Chance isn't required to show the time in which the U visa is likely to be granted. He's owed a presumption that he should get a continuance. Well, the court can consider the amount of time that's going to be likely. It's not, the court, the ILJ, the immigration judge can't put the onus on your client to say how long it's going to take. But the court, the ILJ can consider it, right? The immigration judge can consider it as one procedural factor, but it's the government's burden to show that it wouldn't be granted once he's made a prima facie showing that it will be. And so in the BIA decision, it's page 2 of their decision, the board notes that it's he has not made a showing that it's likely to be granted within a reasonable amount of time. And that's backwards. Because of the presumption? Yes. Then address this issue of futility that's been raised by the government. That is, that it would be futile for us to remand, because roughly, notwithstanding understanding that there's a presumption, we know what's going to happen on remand. That it would be granted. My argument, Your Honor, is that. Right. I think the government is saying it's futile because we know, based on the administrative closure analysis, what the IJ will do. So it's futile for us to remand. I don't think so. There's two issues, Your Honor. And the first is that the agency still has to follow its own rules. And it didn't do so here. And so it has to make that determination in the first instance. And that's what the government suggests, is if the Court considers this question, it's page 27 of their brief, the remand is appropriate for the agency to consider in the first instance whether or not a continuance is warranted. The second is that it's not clear that the continuance wouldn't be granted. We did concede that administrative closure is somewhat foreclosed as an opportunity of relief because of the AG's intervening decision. As I read the immigration judge's decision, the word continuance barely appears. What was asked for was administrative closure or termination of the proceedings. Now, I mean, maybe your argument is going to be that it doesn't make any difference because it's effectively the same thing. Is that the point? That's true. Avetisian, which is overruled by Castro-Trum, makes clear that a continuance is generally granted for a certain amount of time. If I know that I'm going to have an answer from CIS within three months, I can ask for a continuance for three to four months. Administrative closure exists where I don't know how long of a continuance I need. And even under Castro-Trum, either party can put the case back on the calendar over the objections of the other party. It's automatic. So it's really a distinction without a difference. And the standards between the two cases are the same. But what are we supposed to do with the fact that we know it's not going to be a reasonable time? It hasn't. It's been an unreasonable time already. I mean, how much of a – is there any limit? In other words, if the government is understaffed, et cetera, et cetera, and there are lots and lots of applications for U visas and there's a big backlog, you know, it's already been two years? Well, it's been two years since – it's actually been three years since he filed the application October – three years ago this week since he found out that it was prima facie approvable by CIS. It's not that he has to show it will be granted within a reasonable time. He's owed a reasonable continuance. And that reasonableness is determined based on CIS. It's then their burden to show. And as far as delay, there's other – But, I mean, what – so suppose the government came in – had come in at the time and predicted, you know, these things take at least three years, maybe more. Then what happens? Then he gets a continuance for three years. And there's – so there's – I thought you said that the issue was he's entitled to a continuance for a reasonable  So I would argue that that is reasonable. So whatever the agency – However long it's going to take to process U visa applications, if it's 10 years, if it's 20 years, he gets a continuance for that period. That's correct, Your Honor. And there's a number of reasons for that. That's not what Sanchez-Sosa says, right? That says that the immigration judge can consider how long this is going to take. That's a relevant consideration. It is in determining reasonableness. But there's – But what you're saying is that he really can't consider that at all. In other words, it's up to the government to decide how long it takes. And they have it under their control. And so all you have to do is file the application, and you've got yourself a continuance. I'm suggesting it's one of the – of several factors the court should consider, and it didn't consider any of them. As Sanchez-Sosa and Avetisian both made clear, the case really turns on the likelihood of success on the merits, not the – and that's what determines the reasonableness of time that should be allowed, is the likelihood of success on the merits. To your point, though, about, you know, why this can be delayed, it's entirely in the government's control. And there are mechanisms that the government has to make this go faster, particularly in detain cases. As Mr. Chance began his proceedings in detention, the government can request that CIS make an expedited ruling on U visa petitions. So they could have made it go faster. In the non-detained setting, the court has other administrative mechanisms to avoid unnecessary delay. You can put it on a status docket. Sanchez-Sosa to you, which says that even if a petitioner shows that he has filed a completed application, including the law enforcement letter, and the petition appears to meet the necessary criteria to be granted, the immigration judge may still consider the length of time the application has been pending, the number of prior continuances that the court has provided, and additional relevant considerations in deciding whether a further continuance is warranted under the circumstances. So if we send this back, what is the immigration judge to consider? Because what you're saying is that all he has to consider is that there's a U visa that's been applied for. No, Your Honor. He has to consider the likelihood of success on the merits, not just whether or not he's to be granted the U visa, but whether the waiver had an admissibility. And in this case. So this language about the length of time is not accurate, you're saying? No. It's one of the factors. But the motion. Well, it's taking a long time, as Judge Lynch said. So is the immigration judge justified in saying this is taking too long, I'm not going to do this, we're not going to do another, I'm not doing a continuance? If he considers that Mr. Chance, and it's in his determination that Mr. Chance wouldn't be granted the waiver of an admissibility, then he's free to deny the continuance. But he didn't do that here. He's, he's. Your argument is really fundamentally about Courage, our own case, where the I.J., notwithstanding the fact that there was no explicit request for a whatever it was, was provided with a set of arguments and the standard for whatever it was that was being requested, and we said you don't have to be explicit in this case. You wouldn't have to say explicitly that you are asking for a continuance. So long as you provide the correct legal standards and you advance the standards for a continuance and the I.J. didn't apply those standards, then that's enough for a remand. Is that fair? That is fair. Or is that wrong? That is fair, but. Is that what you're arguing or is that not what you're arguing? I would suggest that it's fair, but also the immigration judge and, so the immigration judge does consider it both as a continuance and administrative closure. In 175 and 176 of the record, he cites to both Sanchez-Sosa and Avotisian in the decision. He notes that it's both a request for administrative closure termination and a continuance. The judge and all the parties in front of the immigration judge considered it to be an application for administrative closure or in the alternative a continuance. The judge considered that to be the same. Maybe I ignore that on appeal. And that's the error. And Mr. Chance, now is at liberty under supervision? Is that conditions of supervision? Is that the status? Yes, Your Honor. Okay. All right. We'll hear from the government. Thank you. Thank you, Your Honor. May it please the Court. I'm Scott Stewart on behalf of the Attorney General. In this case, the Board of Immigration Appeals upheld the denial of Mr. Chance's motion to terminate or administratively close and his application for withholding of removal. As we've explained in our briefs, we believe the petition should be dismissed for lack of jurisdiction or in the alternative denied. I'll go right to the issue that my friend and Your Honors were focusing on, the matter of the continuance or the administrative closure. The first point I'd emphasize, and I think Judge Lynch focused on this for a bit as well, is that there's no review of a motion for a continuance properly before this Court. The issue wasn't exhausted. The motion here was a motion to terminate or administratively close. There is some overlap in those rulings, as Your Honors have on those issues, about the likelihood of what's going to happen. But they are different in kind. And the immigration judge, the Board of Immigration Appeals, did treat this as a motion to administratively close or to terminate and not a motion for a continuance. A continuance is a much more modest remedy, I think it's fair to say, Your Honors. I mean, the Court here or the immigration judge here did grant a prior continuance. Roberts. Do you agree that there's a presumption that applies to a motion for continuance that doesn't necessarily apply to a motion for administrative closure? I think Sanchez-Sosa does speak about presumption, Your Honor. I don't think it's as strong as my friend states, however. The language from Sanchez-Sosa says that as a general rule, there's a rebuttable presumption. But it goes on in the very next sentence to emphasize, however, I'm quoting, and this is page 815, an alien who is unlikely to be granted the U visa should not be permitted to seek a status as a dilatory tactic to forestall the conclusion of removal proceedings, end quote. And I think the focus of the inquiry is the likelihood of success on the merits of the success of the visa petition. There needs to be some determination of that, Your Honor. That didn't happen here. No. I think that the immigration judge did consider the relevant features, Your Honor. This would be — this is in particular at pages 98 to 101 of the administrative record, where the Court looks at the various factors considered. Of course, this is, again, not in evaluating the continuance standard, Your Honor. This is the kind of administrative closure standard, because that's what the immigration judge was really presented with. But the Court knows, look, you know, there's a delay issue here. The event happened in 2005. We didn't get this application filed until very recently. It looked like 2016, thereabouts. Alitoso. But is it right that there's a presumption, you can call it a general presumption or a rebuttable presumption, however you want to describe it, in favor of a continuance under these circumstances? I'm not sure. I don't mean to be difficult, Your Honor, but I'm not sure to go quite — I don't want to go quite that far, because even— But what part of that is wrong? It's — the Board in Sanchez-Sosa said in general there is a rebuttable presumption. Okay. So rebuttable presumption in favor of a continuance. It's presumably a rebuttable presumption. It's usually a—  I guess— It's a presumption that there's a presumption, but sometimes there's not a presumption. What does that mean? It is an unusual formulation, no doubt, Your Honor. There is a presumption. It's rebuttable in favor of a continuance, correct? This is why I emphasized that next sentence, Your Honor, where it did — and I think this is part of why the Board did say in general there, even though odd, though it may be, where the Court said, look, he's unlikely to be granted the U visa and is doing it for delay. That disfavors this. So I guess what I'm just saying is that, you know, any presumption, it's not a particularly strong one. It's, you know, most a general one and can be rebutted easily, and it's a holistic analysis. But then what becomes the issue is whether on the merits he's likely to be granted the U visa application. Is that what determines the applicability of the presumption? I guess what I'm saying is that — I think the way I would frame it, Your Honor, is that for a mere continuance, just a continuance, you'd look at the relevant factors and see, you know, like how do they weigh with maybe a slight — a slight thumb on the scale for the continuance. Just not very strong. But you would look at the factors. Part of it, you know, success, what's likely to happen with the application. Is it likely to be granted anytime soon? What are some of the features of this particular petitioner or respondent below? What is DHS — you know, what is its view and why has it taken that view? So it is those kind of holistic factors with just a slight — a slight, you know, thumb. The I.J. here, I mean, your adversary says that the I.J. notwithstanding whatever, however you want to describe this presumption, put the onus on him. He did it to support these — the applicability or the need for a continuance and didn't do it — didn't ask the government to do a thing. Is that correct or is that wrong? I don't think that's right, Your Honor, in two responses. One is it's difficult to fault — I mean, I'm going to say in a moment that I don't think — I'll start with I don't think the I.J. did that here. I think that, particularly the analysis at pages 99 to 100, or I should say the bottom line of 98, where the I.J. says, look, after consideration of the arguments and factors raised by the attorneys, the Court does not find the proper — a proper basis to administratively close or terminate. To administratively close or terminate. Right. There's no ruling on a continuance because no continuance was sought. Right. And that was my second point, Your Honor, is that it's hard to fault the district judge for — or the immigration judge for maybe a framing that isn't in line with a continuance standard when the immigration judge was not presented with a continuance request. I take it that one possibility — I don't know whether this is accurate or not, but it does come from something that Mr. Moravec suggested — is that when you're asking for a continuance, you're asking for a continuance for a set amount of time. When you're asking to terminate the proceedings or administratively close the proceedings, that is because you have no idea how long it's going to take. So we're sort of saying it's an indefinite closure with an option to reopen someday if, as and when, the U visa is denied or some other development takes place. Right. It is that indefinite nature that is kind of the big difference-maker, Your Honor. And I think that's why it's very important why this framing — the presentation as a motion to terminate or to administratively close is very important, because that's what the immigration judge ruled on. Had it just been, hey, you know, give me another month, that might have been a whole different thing. But really it was — this was an Abbottisian kind of an argument. Abbottisian is, of course, a lead administrative closure case. The analysis was of the Abbottisian handful of factors. And that's kind of how the immigration judge — or that's how the immigration judge proceeded here. Roberts. How do we handle Carrage, which seems to say or suggest strongly that you, the Petitioner, doesn't have to explicitly make a motion so long as the Petitioner advances the correct legal standard and the IJ fails to apply that standard? I think here you are — You don't have to say motion. I'm asking for a motion for a continuance. But all of the standards that you advance are for a motion for a continuance. I think I'd highlight some of the points that Judge Lynch just mentioned, Your Honor, is that it's really a — there's a meaningful difference between a continuance request, which really is — does have that time-limited nature. It's more like, you know, give me a week, give me a month, that kind of a thing. And the motion to terminate or administratively close, the Petitioner here was — this was counsel representation. He'd, you know, he'd sought a continuance before. It had been granted. Here he conspicuously labeled his filings as motion to terminate or administratively close. I believe that was the ordering, but you get the idea. And he was not pushing the continuance option. So I think — And at least as — Sorry. All right. Well, at least as far as the immigration judge thought, and I suppose we can hear from Mr. Moravec as to whether this is an inaccurate characterization, the Respondent, through his counsel, says that in determining whether these proceedings should be terminated or closed, the Court should reflect on matter of Sanchez-Sosa. In that case, the Board advised in determining whether good cause exists to continue removal proceedings. In other words, then — then the Court goes on to cite the Sanchez-Sosa findings, but not as this is what's being asked for and this is what the applicable standard is, as — then — then the — the judge contrasts that, or at least goes on to talk about Avetisian after it, which sets a slightly different set of factors, although a very similar set of factors, for termination. Sure. Your Honor, may I answer? I know I'm — So that's why I was — I'm just wondering, is that what happened here? That the — the Petitioner says, look, I want termination or administrative closure, and if you're going to — the place you should look to decide that is to the continuance standard. Is that what really is going on? I don't think so. So this is how — this is how I think the best way to read that piece of 98 is, Your Honor, is that Sanchez-Sosa is helpful because it has that U visa feature to it. So it's informative of how do you handle this collateral U visa application. And then — so the Court acknowledges that and just the learning from there. And then it moves into Avetisian, which is really the standard that the Petitioner was advocating for, because he was seeking administrative closure. So I read that to mean Sanchez-Sosa gives us guidance because it has that U visa context, and we now use that learning to apply the actual standard that we — has been asked of me, the immigration judge, here, which is Avetisian. Thank you very much, Your Honor. Roberts. There's a few brief points, Your Honor. First, the Court does have jurisdiction. I know the government didn't go into it, but did note that it is their position the Court doesn't have jurisdiction over a continuance under Stannuzzi v. Gonzales. That's this Court's decision in 2012. The abuse of discretion issue survives — survives the jurisdiction stripping provisions of the INA. Second, back to the issue of reasonableness and about the amount of time, I would direct the Court to sort of an unpublished decision of this Court a few months ago in Cortez-Gomez v. Barr. Consider a very similar issue regarding a continuance and the amount of reasonable time. That's where a continuance was requested. Yes. And that's where the IJ said, you haven't demonstrated how much time this is going to take, and therefore, that's on you, and so I'm going to deny the continuance. And so it was sent back because the judge, the immigration judge, put the onus on the on how long it was going to take, right? I think what it is, is that the reasonable amount of time was not — it wasn't given enough time to demonstrate when the U visa would be granted. In that case, this Court focused on the fact that the proceedings had only been pending for five months. There's no one in the immigration world who thinks that one of these applications can go forward in five months. So a continuance — there was, in that case, only two continuances, a couple of weeks the first time, a month the second time. No one would think that is a reasonable amount of time to allow a U visa to go forward since it can't be done in that amount of time. And so that's unreasonable, and the Court reversed. I think the bigger issue here, again, is the failure to consider the likelihood of success on the merits. And I would direct the Court to the immigration judge's statement at 176 that he was perplexed by the entire area of case law. It was perplexing to him why a U visa application should even stay proceedings at all, and that's the analysis I would ask the Court to look to. Thank you. Kennedy. Just puzzled how the government takes the position that they do not want to continue a case. Is that what you're referring to? Yes, Your Honor. The immigration judge could not understand the legal precedent he was supposed to be applying and didn't consider the factors he should have in granting or denying that continuance. But it wasn't requested, right, other than implicitly. You concede that, right? I concede the word continuance was never said. Well, I mean, usually when you ask for something, you say what you're asking for, right? Right, Your Honor. And I think that comes from the fact that continuance wouldn't have been appropriate. The continuance issue, the appropriateness of asking for continuance only exists because of castratum, because of the Attorney General's decision to erase administrative closure as a form of docket management in cases like this. Administrative closure, as I said before, it's a distinction without a difference. It's just a continuance for an unsaid amount of time that either party, at the end of which, can bring the case back. But we should conclude that a request for administrative closure implicitly includes the lesser request of a continuance in every case. In every case, that's what we should do. We should treat them as the same. So going forward, every immigration judge should understand that a request for administrative closure is not merely that. It's other stuff, too. I don't think you have to go that far. I think in this case, the counsel for Mr. Chance asked for administrative closure, and the immigration judge took it as a request for continuance. That much is in the record. Is there any procedural rule governing immigration proceedings that defines a request for a continuance as a request for a continuance for a specific amount of time? No. It just says a continuance should be granted for good cause shown. So as a matter of practice, maybe the lawyers figured I should ask for administrative closure or termination if I'm asking for a very lengthy and indefinite continuance. But there's nothing that says you can't ask for an indefinite continuance. And presumably today, that's what people would do since administrative closure is no longer on the table. But at the time this happened, you're saying administrative closure was just another term for indefinite continuance. Exactly, Your Honor. And because of the Castro-Toome decision, as government concedes, Abitizian was the correct law at the time. They have the same standards. They both turn on whether or not the petition was likely to be granted on the merits. And because the judge in this case on the BIA failed to consider the merits, it should be remanded. Thank you very much. Thank you.